# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FKF MADISON PARK GROUP OWNER, LLC,<br>Debtor. | Chapter 11<br>Case No. 10-11867 (KG) |
| In re:<br><br>JMJS 23RD STREET REALTY OWNER, LLC,<br>Debtor. | Chapter 11<br>Case No. 10-11868 (KG) |
| In re:<br><br>MADISON PARK GROUP OWNER, LLC,<br>Debtor. | Chapter 11<br>Case No. 10-11869 (KG) |
| In re:<br><br>SLAZER ENTERPRISES OWNER, LLC,<br>Debtor. | Chapter 11<br>Case No. 10-11870 (KG) |
| GREEN BRIDGE CAPITAL S.A. and<br>SPECIAL SITUATION S.A,<br><br>        Plaintiffs,<br><br>        v.<br><br>IRA SHAPIRO,<br><br>        Defendant. | Adv. Proc. No.: |

## VERIFIED ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs Green Bridge Capital S.A. ("Green Bridge") and Special Situation S.A. ("Special Situation," together with Green Bridge, the "Plaintiffs") by their counsel, Morris James LLP, as and for their Verified Complaint against Defendant, Ira Shapiro ("Shapiro" or "Defendant"), alleges as follows:

2922384/1

## I. NATURE OF THIS ACTION

1. This adversary proceeding seeks to remedy the fact that the debtors, Slazer Enterprises Owner LLC ("Slazer Owner"), Madison Park Group Owner LLC ("Madison Park"), FKF Madison Group Owner LLC ("FKF") and JMJS 23rd Street Realty Owner LLC ("JMJS," together with Slazer Owner, Madison Park and FKF, the "Debtors"), are presently taking actions and filing papers in this Court without any corporate authority whatsoever. Plaintiffs commence this adversary proceeding to (a) block Defendant's attempt to act on behalf of the Debtors in these bankruptcy cases and (b) exercise their valid authority, as the holders of the majority of voting membership interests in Slazer Enterprises, LLC ('Slazer Enterprises") to act on behalf of the Debtors, and to steward the Debtors towards a successful resolution of their chapter 11 cases.[1]

2. As demonstrated herein, only Slazer Enterprises, as sole member of Slazer Owner and manager of each of Madison Park, JMJS and FKF, has any authority to act on behalf of the Debtors in this Court or otherwise. Plaintiffs constitute a majority of the voting interests of Slazer Enterprises. Green Bridge holds a 35% membership interest in Slazer Enterprises and Special Situations holds the voting proxy for a separate 32.5% membership interest in Slazer Enterprises. Accordingly, together, Plaintiffs hold 67.5% of the voting membership interests in Slazer Enterprises, and thereby have authority to control, manage and direct each of the Debtors. Conversely, Defendant, as holder of only a 32.5% membership interest in Slazer Enterprises, acting alone, has no such authority (and yet has implicitly, if not expressly, misrepresented to this Court that he has such authority, as none of the actions of these Debtors in this Court have been consented to by any member of Slazer Enterprises, other than Defendant).

---

[1] For the sake of clarity, Plaintiffs do not object to any prior order issued in these bankruptcy cases.

2922384/1

3. By this adversary proceeding, Plaintiffs seek judgment declaring (a) that Plaintiffs, acting together, (i) constitute a majority of the voting interests of Slazer Enterprises and (ii) are therefore authorized, in such capacity and through Slazer Enterprises, to act on behalf of, manage and direct the Debtors, and (b) that the Defendant, acting without the consent of one of Plaintiffs, has no authority to act on behalf of the Debtors or to take any act on their behalf in this Court or otherwise. Plaintiffs also seek a permanent injunction barring Defendant, when acting without the written consent of at least one of the Plaintiffs, from (i) holding himself out as the authorized representative of Slazer Enterprises or the Debtors, (ii) taking any action on behalf of Debtors in this Court or otherwise. Additionally, Plaintiffs seek a stay of these bankruptcy cases pending a determination by this Court as to the authorized party, and counsel, to act on behalf of the debtors.

## II. THE PARTIES

4. Plaintiff Green Bridge is a corporation organized under the laws of the Marshall Islands, having offices c/o ATTC S.A.M., 7 Avenue de Grand Bretagne, 98000 Monaco.

5. Plaintiff Special Situation is a corporation organized under the laws of the Marshall Islands, having offices c/o ATTC S.A.M., 7 Avenue de Grand Bretagne, 98000 Monaco.

6. Upon information and belief, Defendant Ira Shapiro is an individual residing at 230 Congers Road, New City, NY 10956, who has filed or allowed to be filed on his behalf, certain declarations and affidavits in this Court representing that he is authorized to act on behalf of the Debtors.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8. This is a core proceeding under 28 U.S.C. § 157(b).

9. Venue in this Court is proper pursuant to 28 U.S.C. §1409(a).

## IV. THE BANKRUPTCY CASE

10. On June 8, 2010, involuntary chapter 7 petitions were filed in this Court against each of the Debtors by creditors Stephen Kraus, Mitchell Kraus, Barbara Kraus, and Kraus Hi-Tech Home Automation, Inc. (the "Petitioning Creditors").

11. Subsequently, various other creditors joined in the involuntary petitions.

12. The Defendant, purportedly on behalf of the Debtors, filed a motion to dismiss the involuntary petitions.

13. On November 18, 2010, the Petitioning Creditors filed a motion seeking immediate entry of orders for relief followed by conversion of the chapter 7 cases to proceedings under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

14. Also on November 18th, Defendant, purportedly on behalf of the Debtors, filed a Withdrawal of Opposition to the involuntary petitions, notice of non-opposition to the entry of order for relief, and joinder in motion to convert the cases to chapter 11 cases.

15. At the same time, Defendant, purporting to act for the Debtors, submitted to the Court, among other things, a plan support agreement, which outlined the proposed terms of a plan of reorganization (the "Plan Term Sheet"), proposed funding for the administrative expenses related to a chapter 11 case, and proposed debtor-in-possession financing.

16. The Plan Term Sheet provides, *inter alia*, for:

    a. Revesting of the Debtors' assets and property in a reorganized debtor, 100% of the equity of which to be owned by a newly formed entity owned by certain of the Petitioning Creditors and New One Madison Park Member I, LLP; and

    b. Entry by the reorganized debtor into a consulting agreement with Defendant.

17. On November 19, 2010, this Court entered an order converting the Debtors' cases from chapter 7 to chapter 11.

## V. FACTS

A. <u>Slazer Enterprises</u>

18. Slazer Enterprises is a New York limited liability company.

19. In and around October 2007, Defendant and Marc Jacobs ("Jacobs") entered into the Amended and Restated Operating Agreement of Slazer Enterprises, LLC (the "Slazer Enterprises Operating Agreement"). A copy of the Slazer Enterprises Operating Agreement is annexed hereto as Exhibit A and incorporated by reference.

20. As of the execution of the Slazer Enterprises Operating Agreement, Defendant and Jacobs each owned 50% of Slazer Enterprises, as reflected on Exhibit A thereto.

21. The Slazer Enterprises Operating Agreement reflects that in return for an $18,000,000 loan from Level One US Properties LLC ("Level One"), Level One was granted a pledge against, and the option to purchase for one dollar, a 35% membership interest in Slazer Enterprises.

22. Pursuant to Section 2.3 of the Slazer Enterprises Operating Agreement, Slazer Enterprises was formed to act as manager of FKF, JMJS and Madison Park.

23. Pursuant to Section 5.1 of the Slazer Enterprises Operating Agreement, Slazer Enterprises is to be managed by its members, who originally, were Defendant and Jacobs.

24. Pursuant to Section 5.2.2 of the Slazer Enterprises Operating Agreement, a majority vote of members is required for the approval of the day-to-day operations of Slazer Enterprises.

25. However, Section 5.2.2 (1)-(5) provides that unanimous approval is required for:

   1. Borrowing more than $1,000;

   2. Engaging in business in any jurisdiction which does not provide for the registration of limited liability companies;

   3. The sale, exchange, lease, mortgage pledge, or other transfer, or financing or refinancing, of all or substantially all of Slazer Enterprises' assets;

   4. Mergers or consolidations; and

   5. Amending the Articles of Organization or Operating Agreement.

26. Section 5.2.1 of the Slazer Enterprises Operating Agreement provides that members of Slazer Enterprises may vote by proxy.

27. By assignment agreement dated September 16, 2009 (the "Assignment Agreement"), Level One assigned to Green Bridge all of its right, title and interest in and to the Slazer Enterprises Operating Agreement, including, without limitation, Level One's rights and privileges in and to a certain option to purchase a 35% interest in Slazer Enterprises. A copy of the Assignment Agreement is annexed hereto as Exhibit B and incorporated by reference.

28. By Notice of Exercise of Option and Consent, dated September 16, 2009 (the "Notice of Exercise of Option"), Green Bridge elected to exercise its option to purchase 35% of the membership interest in Slazer Enterprises. A copy of the Notice of Exercise of Option is annexed hereto as Exhibit C and incorporated by reference.

29. By the Notice of Exercise of Option, Green Bridge also consented to be bound by the Slazer Enterprises Operating Agreement.

30. By letter dated September 16, 2009 (the "September 16th Letter"), Slazer Enterprises (i) confirmed receipt of the Notice of Exercise of Option and (ii) noted that the records of Slazer Enterprises were duly adjusted to reflect Green Bridge's 35% interest in Slazer Enterprises. A copy of the September 16th Letter is annexed hereto as Exhibit D and incorporated by reference.

31. Attached to the September 16th Letter was an updated Member Schedule, dated September 18, 2009, reflecting that Defendant held 32.5% of the membership interest, Jacobs held 32.5%, and Green Bridge held 35%.

32. On December 14, 2009 Jacobs entered into an agreement with Special Situation (the "December Proxy Agreement"). A copy of the December Proxy Agreement is annexed hereto as Exhibit E and incorporated by reference.

33. Pursuant to the December Proxy Agreement, Jacobs granted to Special Situation an irrevocable proxy to vote Jacobs' 32.5% interest in Slazer Enterprises.

34. On March 24, 2010, Jacobs and Special Situation entered into an Amended and Restated Agreement (the "Amended Proxy Agreement"). A copy of the Amended Proxy Agreement is annexed hereto as Exhibit F and incorporated by reference.

35. The Amended Proxy Agreement supersedes the December Proxy Agreement.

36. In relevant part, the Amended Proxy Agreement restates that Jacobs grants Special Situation an irrevocable proxy to vote Jacobs' 32.5% interest in Slazer Enterprises.

37. As a result of the various agreements, the current voting rights of Slazer Enterprises are as follows:

    a. Special Situation (through the proxy granted by Jacobs) 32.5%;

    b. Defendant 32.5%; and

c. Green Bridge 35%.

38. A majority of the members have never consented to Defendant acting on behalf of Slazer Enterprises in these bankruptcy cases, and have not authorized Defendant to take any actions on behalf of the Debtors with respect to these bankruptcy cases. Defendant, acting alone, lacks the authority to take any action on behalf of the Debtors.

39. Specifically, among other things, Plaintiffs do not consent and have not authorized the Debtors' to file motions in these bankruptcy cases, including, without limitation, motions for the appointment of a Chief Restructuring Officer or for debtor in possession financing, nor to file any plan term sheets or plans in these bankruptcy cases.

B. <u>Slazer Owner</u>

40. Slazer Owner, one of the Debtors, is a Delaware limited liability company.

41. On or about June 29, 2009, Ira Shapiro, as a member of Slazer Enterprises, the manager of Slazer Owner, executed the Certificate of Slazer Enterprises Owner LLC (the "Slazer Owner Certificate"). A copy of the Slazer Owner Certificate is annexed hereto as Exhibit G and incorporated by reference.

42. Annexed as Exhibit B to the Slazer Owner Certificate is the Amended and Restated Operating Agreement of Slazer Owner (the "Slazer Owner Operating Agreement"). A copy of the Slazer Owner Operating Agreement is annexed as Exhibit H and incorporated by reference.

43. The Slazer Owner Operating Agreement was entered into by Slazer Enterprises, as the sole equity member of Slazer Owner, on the one hand, and the Slazer Owner Independent Managers (as defined below), on the other.

44. Slazer Owner's independent managers are Beth Peoples and Julia McCullough (the "Slazer Owner Independent Managers").

45. The sole member of Slazer Owner is Slazer Enterprises.

46. In relevant part, Section 9(a) of the Slazer Owner Operating Agreement states that the business and affairs of Slazer Owner shall be managed by, or under the direction of, Slazer Enterprises.

47. In relevant part, Section 9(d)(iii) of the Slazer Owner Operating Agreement provides that "Material Actions" require the unanimous consent of the member, Slazer Enterprises, and the Slazer Owner Independent Managers.

48. Material Action is defined in Schedule A of the Slazer Owner Operating Agreement as:

> "Material Action" means to consolidate or merge the Company with or into any Person, or sell all or substantially all of the assets of the Company, or to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make an assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or declare or effectuate a moratorium on the payment of any obligation, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

C. Madison Park Group Owner LLC

49. Madison Park, one of the Debtors, is a Delaware limited liability company, formed on March 7, 2006.

50. On or about June 29, 2009, Ira Shapiro, as a member of Slazer Enterprises, the manager of Madison Park, executed the Certificate of Madison Park Group Owner LLC (the

"Madison Park Certificate"). A copy of the Madison Park Certificate is annexed hereto as Exhibit I and incorporated by reference.

51. Annexed as Exhibit B to the Madison Park Certificate is the Amended and Restated Operating Agreement of Madison Park (the "Madison Park Operating Agreement"). A copy of the Madison Park Operating Agreement is annexed as Exhibit J and incorporated by reference herein.

52. The Madison Park Operating Agreement is entered into between Kevin Romano, Howard Josephs, Mitchell Klein and Walter Klauser, as sole equity members, Slazer Enterprises, as manager, and Beth Peoples and Julia McCullough, as independent managers (the "Madison Park Independent Managers").

53. Pursuant to Section 9(a) of the Madison Park Operating Agreement, the company's business and affairs are to be managed by Slazer Enterprises, provided, however, that, pursuant to Section 9(d)(iii), unanimous written consent of the manager and the Madison Park Independent Managers is required before any "Material Action" is taken.

54. Material Action is defined in Schedule A of the Madison Park Operating Agreement as:

> "Material Action" means to consolidate or merge the Company with or into any Person, or sell all or substantially all of the assets of the Company, or to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make an assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or declare or effectuate a moratorium on the payment of any obligation, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

D.  FKF Madison Group Owner LLC

55. FKF, one of the Debtors, is a Delaware limited liability company, formed on March 7, 2006.

56. On or about June 29, 2009, Ira Shapiro, as a member of Slazer Enterprises, the manager of FKF, executed the Certificate of FKF Madison Group Owner LLC (the "FKF Certificate"). A copy of the FKF Certificate is annexed hereto as Exhibit K and incorporated be reference.

57. Annexed as Exhibit B to the FKF Certificate is the FKF Amended and Restated Operating Agreement (the "FKF Operating Agreement"). A copy of the FKF Operating Agreement is annexed hereto as Exhibit L and incorporated by reference.

58. The FKF Operating Agreement is entered into by John Magee, Burt Dorfman and Mitchell Kelin, as the sole equity members of FKF, Slazer Enterprises, as manager of FKF, and Beth Peoples and Julia McCullough, as the independent managers of FKF (Beth Peoples and Julia McCullough referred to jointly as the "FKF Independent Managers").

59. Pursuant to Section 9(a) of the FKF Operating Agreement, the company's business and affairs are to be managed by Slazer Enterprises, provided, however, that, pursuant to Section 9(d)(iii), unanimous written consent of the manager and the FKF Independent Managers is required before any "Material Action" is taken.

60. Material Action is defined in Schedule A of the FKF Operating Agreement as:

> "Material Action" means to consolidate or merge the Company with or into any Person, or sell all or substantially all of the assets of the Company, or to institute proceedings to have the Company be adjudicated bankruptcy or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any

applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make an assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or declare or effectuate a moratorium on the payment of any obligation, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

E.     JMJS 23rd Street Realty Owner LLC

61.    JMJS, one of the Debtors, is a Delaware limited liability company, formed on March 7, 2006.

62.    On or about June 29, 2009, Ira Shapiro, as a member of Slazer Enterprises, the manager of JMJS, filed the Certificate of JMJS 23rd Street Realty owner (the "JMJS Certificate"). A copy of the JMJS Certificate is annexed hereto as Exhibit M and incorporated be reference.

63.    Annexed as Exhibit B to the JMJS Certificate is the JMJS Amended and Restated Operating Agreement (the "JMJS Operating Agreement"). A copy of the JMJS Operating Agreement is annexed hereto as Exhibit N and incorporated by reference.

64.    The JMJS Operating Agreement is entered into by Scott Haber, Michael Haber, Jerome Haber and Jeffrey Haber, the sole equity members of JMJS, Slazer Enterprises, as manager of JMJS, and Beth Peoples and Julia McCullough, as the independent managers of FKF (Beth Peoples and Julia McCullough referred to jointly as (the "JMJS Independent Managers").

65.    Pursuant to Section 9(a) of the JMJS Operating Agreement, the company's business and affairs are to be managed by Slazer Enterprises, provided, however, that, pursuant to Section 9(d)(iii), unanimous written consent of the manager and the JMJS Independent Managers is required before any "Material Action" is taken.

66. Material Action is defined in Schedule A of the JMJS Operating Agreement as:

> "Material Action" means to consolidate or merge the Company with or into any Person, or sell all or substantially all of the assets of the Company, or to institute proceedings to have the Company be adjudicated bankruptcy or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make an assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or declare or effectuate a moratorium on the payment of any obligation, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

## FIRST CLAIM FOR RELIEF
(Declaratory Judgment)

67. Plaintiffs repeat and reallege paragraphs 1 through 66 as if fully set forth herein.

68. Slazer Enterprises is the sole member of Slazer Owner.

69. The day-to-day business affairs of Slazer Owner are governed by Slazer Enterprises.

70. The day-to-day operations of Slazer Enterprises are governed by an affirmative vote of members holding the majority of the membership interest percentages.

71. Slazer Enterprises has not provided authority to Defendant to take any actions as a representative of Slazer Enterprises on behalf of Slazer Owner.

72. Only Slazer Enterprises, acting with a majority voting interest, has any authority to act on behalf of the Debtors in this Court or anywhere.

73. Plaintiffs constitute a majority of the voting interests of Slazer Enterprises.

74. As such, Defendant has no authority to act on behalf of Slazer Owner including, without limitation, to submit any filings in this Court on behalf of Slazer Owner.

75. Defendant has taken actions purportedly on behalf of Slazer Owner *ultra vires*.

76. A justiciable controversy exists.

77. Therefore, a judicial declaration is necessary and appropriate at this time declaring that no action can be taken by Slazer Enterprises on behalf of Slazer Owner without, at least, a majority vote by the membership interests of Slazer Enterprises authorizing action on behalf of Slazer Owner.

### SECOND CLAIM FOR RELIEF
(Declaratory Judgment)

78. Plaintiffs repeat and reallege paragraphs 1 through 77 as if fully set forth herein.

79. Slazer Enterprises manages the affairs of debtors JMJS, FKF and Madison Park.

80. As the day-to-day manager of JMJS, FKF and Madison Park, the business and affairs of these entities is managed by Slazer Enterprises.

81. The day-to-day operations of Slazer Enterprises are governed by an affirmative vote of members holding the majority of the membership interest percentages.

82. Slazer Enterprises has not authorized Defendant to take any actions as a representative of Slazer Enterprises as manager for JMJS, FKF and Madison Park.

83. Only Slazer Enterprises, acting with a majority voting interest, has any authority to act on behalf of the Debtors in this Court or anywhere.

84. Plaintiffs constitute a majority of the voting interests of Slazer Enterprises.

85. As such, Defendant has no authority to act on behalf of JMJS, FKF and Madison Park including, without limitation, to submit any filings in this Court on behalf of JMJS, FKF and Madison Park.

86. Defendant has taken actions purportedly on behalf of JMJS, FKF and Madison Park *ultra vires*.

87. A justiciable controversy exists.

88. Therefore, a judicial declaration is necessary and appropriate at this time declaring that no action can be taken by Slazer Enterprises on behalf of JMJS, FKF and Madison Park without, at least, a majority vote by the membership interests of Slazer Enterprises authorizing action on behalf of JMJS, FKF and Madison Park.

### THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

89. Plaintiffs repeat and reallege all paragraphs 1 through 88 as if fully set forth herein.

90. Slazer Enterprises is the sole member of Slazer Owner.

91. Slazer Enterprises is the day-to-day manager of JMJS, FKF and Madison Park.

92. All of the day-to-day business affairs of the Debtors are controlled by Slazer Enterprises.

93. Defendant has taken actions on behalf of the Debtors without authorization.

94. As a result of Defendant's improper and inappropriate actions, authorized decisions of Slazer Enterprises have been ignored.

95. Despite his having no authority to do so, Defendant has hired counsel for Debtors in this bankruptcy case and has made unauthorized decisions including, without limitation, the filing of a Plan Term Sheet.

96. A justiciable controversy exists.

97. Therefore, a judicial declaration is necessary and appropriate at this time declaring that Slazer Enterprises is the only entity authorized to make decisions on behalf of the Debtors and that, as a result of the vote by a majority of the membership interests of Slazer

2922384/1

15

Enterprises, only Plaintiffs are authorized to retain counsel on behalf of the Debtors, and their decisions regarding the Debtors govern.

## FOURTH CLAIM FOR RELIEF
(Injunction)

98. Plaintiffs repeat and reallege all paragraphs 1 through 98 as if fully set forth herein.

99. Defendant was not authorized to take any action on behalf of the Debtors.

100. All filings, including, without limitation, the Debtors' Plan Term Sheet, have been improperly filed with this Court.

101. As set forth above, a declaration by this Court is necessary to establish the appropriate and proper party that may act for and represent Debtors in this Court.

102. This Court should permanently enjoin Defendant from taking any action on behalf of the Debtors that were not authorized by a majority of the holders of the Slazer Enterprises membership interests.

103. Plaintiffs lack an adequate remedy at law.

104. Accordingly, this Court should grant Plaintiffs' injunctive relief permanently barring Defendant from acting for Slazer Enterprises without appropriate authorization.

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and against Defendant as follows:

1. A declaration that no action be taken by Slazer Enterprises on behalf of Slazer Owner without the requisite majority vote by the membership interests of Slazer Enterprises authorizing action on behalf of Slazer Owner;

2. A declaration that no action be taken by Slazer Enterprises on behalf of JMJS, FKF and Madison Park without the requisite majority vote by the membership interests of Slazer Enterprises authorizing action on behalf of JMJS, FKF and Madison Park;

3. A declaration that Slazer Enterprises is the only entity authorized to make decisions on behalf of the Debtors and that, as a result of the vote by a majority of the membership interests of Slazer Enterprises, Plaintiffs are the only party authorized to retain counsel on behalf of the Debtors and manage and direct the Debtors in these cases;

4. A permanent injunction enjoining and restraining Defendant from taking any action or filing any papers in this Court absent appropriate authority;

5. Requiring Defendant to pay the Plaintiff's counsel fees and expenses; and

6. Awarding such other and further relief as the Court deems proper.

Dated: December 15, 2010

MORRIS JAMES LLP

Brett D. Fallon (DE Bar No. 2480)
Carl N. Kunz, III (DE Bar No. 3201)
Douglas N. Candeub (DE Bar No. 4211)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: bfallon@@morrisjames.com
ckunz@morrisjames.com
dcandeub@morrisjames.com

*Attorneys for Plaintiffs*

# VERIFICATION

PRINCIPALITY OF MONACO        )

CITY OF MONTE CARLO           )

YVES BAERT, hereby declares under penalty of perjury under the laws of the United States of America that:

I am the Director of Plaintiff Green Bridge Capital S.A., have read the foregoing Verified Complaint and know the contents thereof and the same is true to my own knowledge, except for those matters stated to be upon information and belief, and as to those matters, I believe them to be true.

_____
YVES BAERT

{00096327.DOC; 3}2922384/1

# VERIFICATION

PRINCIPALITY OF MONACO )

CITY OF MONTE CARLO )

YVES BAERT, hereby declares under penalty of perjury under the laws of the United States of America that:

I am the Director of Plaintiff Special Situation S.A., have read the foregoing Verified Complaint and know the contents thereof and the same is true to my own knowledge, except for those matters stated to be upon information and belief, and as to those matters, I believe them to be true.

_____
YVES BAERT

{00096327.DOC; 3}2922384/1