# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 10-11867 (KG) |
| FKF MADISON PARK GROUP | ) | (Jointly Administered) |
| OWNER, LLC, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| GREEN BRIDGE CAPITAL S.A. and | ) | |
| SPECIAL SITUATION S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Case No. 10-56158 |
| | ) | |
| v. | ) | |
| | ) | |
| IRA SHAPIRO, | ) | |
| | ) | |
| Defendant. | ) | **Re Dkt No. 5** |
| _____ | ) | |

## MEMORANDUM OPINION[1]

Bruce Grohsgal  
Pachulski, Stang, Ziehl & Jones LLP  
919 N. Market Street, 16th Floor  
Wilmington, DE 19899-8705  

Proposed Counsel for Debtors

Carl N. Kunz, III  
Brett D. Fallon  
Douglas N. Candeub  
Morris James LLP  
500 Delaware Avenue, Suite 1500  
Wilmington, DE 19899  

Counsel for Plaintiffs  
Green Bridge Capital S.A. and  
Special Situation, S.A.

---

[1] This Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

## Introduction[2]

The parties in this adversary proceeding are battling over control of a limited liability company and to establish who has authority to steer debtors through their bankruptcy cases. The decision will rest upon the governing documents. Plaintiffs have moved for a temporary restraining order (the "Motion") to enjoin what they claim is the unauthorized exercise of authority. The Debtors are: Slazer Enterprises Owner LLC ("Slazer Owner"), Madison Park Group Owner LLC ("Madison Park"), FKF Madison Group Owner LLC ("FKF Madison") and JMJS 23rd Street Realty Owner LLC ("JMJS") (collectively, the "Debtors")[3]. The Debtors are owners as tenants in common of a fifty story condominium tower located at 23 East 22nd Street, New York City, containing 69 units, and an adjacent undeveloped lot (the "Project"). The Debtors' respective ownership interests are: Slazer Owner - 78%, Madison Park - 12%, FKF Madison - 6% and JMJS - 4%.

## Slazer Enterprises, LLC

The entity at the center of the present controversy is Slazer Enterprises, LLC ("Slazer"), a New York limited liability company. Slazer is the sole member of Slazer Owner (one of the Debtors), and serves as the manager for all of the Debtors. It is the control of Slazer, and thereby the indirect control of Debtors, which is at the center of the adversary proceeding. Defendant Ira Shapiro ("Shapiro") and Marc Jacobs ("Jacobs") formed Slazer

---

[2] Time constraints will limit the Court's ability to write with the detail the parties' efforts deserve. There will be additional opportunities to elaborate on the facts.

[3] The cases are being jointly administered.

in 2006 and both owned a 50% membership interest in Slazer. The ownership of Slazer and whether Shapiro took authorized actions and has authority to act on Slazer's and, as manager, Debtors' behalf are the issues presented. The plaintiffs, Green Bridge Capital S.A. ("Green Bridge") and Special Situation S.A. ("Special Situation"), claim the authority is theirs.

## Relevant Background Facts

Slazer began construction of the Project in 2007. SFT I, Inc., a subsidiary of Credit Suisse, provided the construction loan to the Debtors, as borrowers under a Building Loan and Security Agreement (the " Building Loan"), in the sum of $238.5 million. Slazer was not a borrower. Thereafter, the lender assigned the loan to now senior secured lender iStar Tara LLC ("iStar"). Another entity, Level One US Properties, LLC ("Level One"), provided Debtors with a mezzanine loan in the sum of $15 million.

The problems with the Project became critical in 2009, with the real estate recession in New York and cost overruns with the Project. The Project remains incomplete, with fewer than 10 percent of the units occupied. Although much, if not most, of the evidence presented at the hearing related to non-control issues, the Court does not yet have to decide such issues as the cost to complete or value of the Project, nor whether the difficulties the Project has encountered are the result of mismanagement, lender issues or actions taken or not taken by the members of Slazer, Shapiro and Green Bridge in particular. Instead, the governing documents and the actions of the parties relating to ownership of Slazer will dictate the

Court's decision.[4]

## Ownership

The Court finds that plaintiffs, Green Bridge and Special Situation, S.A., have established the following facts:

1. Slazer's original ownership was divided equally between Shapiro and Jacobs.

2. In exchange for its initial financing of $15 million (eventually increased to $24.6 million), Level One obtained an option to purchase a 35% membership interest in Slazer.

3. In September 2009, Level One assigned the option to purchase to Green Bridge. Slazer expressly and in writing consented to the assignment (PX 14) and Green Bridge gave notice that it was exercising its option and would become a member of Slazer (PX 15). The ownership interests thereby became:

|  |  |
|---|---|
| Shapiro | 32.5% |
| Jacobs | 32.5% |
| Green Bridge | 35.0% |

Slazer, through Shapiro, confirmed that it received the notice of exercise of option by Green Bridge and that it had amended its records to reflect Green Bridge's 35% ownership interest. Letter, dated September 16, 2006 (PX 16). The letter also attached an updated Member Schedule reflecting Green Bridge's interest.

---

[4] There are various motions scheduled to be heard, including iStar's motion to lift the automatic stay to foreclose and Shapiro's motion on behalf of Debtors for appointment of a chapter 11 trustee. In addition, Shapiro has filed an adversary proceeding on Debtors' behalf and individually alleging breaches of fiduciary duty.

4. On December 14, 2009, without Shapiro's knowledge, Jacobs executed an irrevocable proxy to Special Situation to vote Jacobs' 32.5% interest in Slazer (PX 19). The proxy gave plaintiffs a 67.5% voting interest in Slazer, a clear majority over Shapiro's 32.5% voting interest.

5. On January 26, 2010, Shapiro, Special Situation and Green Bridge executed a memorandum of understanding (the "Memorandum of Understanding") (PXs 18A and 18B) which provided, in part, that:

> All actions taken by [Slazer] may be duly effected by simple majority vote of the members, except those actions which, by statute, are required to be undertaken by greater thresholds. This paragraph would effect a change to the Operating Agreement and therefore is subject to the approval of [iStar].[5]

It is clear from the Memorandum of Understanding, signed by Special Situation as proxy, that Shapiro knew at the time of its execution that Special Situation had Jacobs' proxy. Shapiro did not protest that the proxy was ineffective. In fact, the Slazer Operating Agreement contemplates proxies. Slazer Operating Agreement at Section 5.2.1.

## The Bankruptcy Proceedings

On June 8, 2010, creditors of the Debtors filed involuntary petitions against the Debtors in this Court. Shapiro, on behalf of the Debtors, moved to dismiss the involuntary petitions. The parties agree that Shapiro requested and obtained the consent of Green Bridge

---

[5] The Court is unsure whether iStar approved the quoted provision of the Memorandum of Understanding. It is mentioned here only to illustrate that Shapiro knew about the proxy and did not object.

and Special Situation to defend against and seek dismissal of the involuntary petitions.

Shapiro went beyond the effort to dismiss the involuntary petitions. He withdrew opposition to the involuntary petitions, allowed the entry of an Order for Relief Under Chapter 7, and agreed to the conversion of the cases to Chapter 11. D.I. 118 and 119. Shapiro took further actions. He negotiated and obtained agreement from a party to provide debtor in possession financing for Debtors, and filed a plan which provided, *inter alia*., for the sale of all of Debtors' assets to the plan sponsor, New One Madison Park Member I, L.P. While the plaintiffs were exchanging correspondence with Shapiro concerning his authority to take action in furtherance of the chapter 11 case, Shapiro caused Debtors to file substantive motions with the Court, on shortened notice, requesting appointment of a chief restructuring officer and approving financing which would prime iStar's secured interest. It was then that plaintiffs filed the instant adversary proceeding and the Motion. Green Bridge and Special Situation also took action, by written resolution, to remove Shapiro as Slazer's president.

## **Ruling**

The Court has made its preliminary findings, mindful that the Motion seeks a temporary restraining order requiring a finding of a "reasonable likelihood of success" on the merits and not conclusory findings. However, given the amount of evidence the parties introduced at the lengthy evidentiary hearing, the preliminary findings are more definitive than usual.

The controlling legal principles are not complex and command the result. A party cannot subject an entity to bankruptcy without authority. *Price v. Gurney*, 324 U.S. 100, 105-07. Determining authority is a question of state law, and in the case of a limited liability company is governed by the operating agreement, which defines the rights of members. *In re Am. Globus Corp.*, 195 B. R. 263, 265 (Bankr. S.D.N.Y. 1996); *Willoughby Rehab. and Health Care Center, LLC v. Webster*, 2006 WL 3068961 at *4 (N.Y. Sup. Ct. Oct. 26, 2006).

Slazer is governed in accordance with an Amended and Restated Operating Agreement, dated October 2007 ("Slazer Operating Agreement") (PX 1). The provisions of the Slazer Operating Agreement pertinent to the dispute are as follows:

> 6.1. Transfers. No member may Voluntarily Transfer all, or any portion of, or any interest or rights in, the Membership Interest owned by the Member. Each Member hereby acknowledges the reasonableness of this prohibition in view of the purposes of the Company and the relationship of the Members. The voluntary Transfer of any Membership Interests, including Economic Interests, in violation of the prohibition contained in this Section 6.1 shall be deemed invalid, null and void, and of no force or effect.. . .Notwithstanding the foregoing, the Members hereby agree that a transfer of Membership Interests to Level One in connection with its exercise of its right under the Level One Agreement to acquire 35% of the Membership Interests shall be permitted.

The Slazer Operating Agreement and the Memorandum of Understanding also direct that all actions which Slazer takes require a majority vote of the members unless otherwise required by statute. Here, Green Bridge acquired its membership interest with Shapiro's explicit and express consent (PX 16). Similarly, Jacobs' proxy to Special Situation is

permissible under New York law. McKinney's Limited Liability Company Law § 402(b). The Slazer Operating Agreement also permits a member to vote by proxy. Slazer Operating Agreement, Section 5.2.1.

Shapiro admitted to the validity of Green Bridge's membership and Special Situation's proxy when he requested their consent to defend against the involuntary bankruptcy.

Each of the Debtors' Operating Agreements (PXs 2-5) requires the unanimous written consent of Slazer to take any Material Action (a defined term which includes consenting to the institution of bankruptcy proceedings). Thus, Shapiro could not alone consent to the conversion to chapter 11. Placing an entity into bankruptcy clearly exceeds ordinary business activities. *DB Capital Holdings, LLC v. Aspen HH Ventures, LLC* (*In re DB Capital Holdings*), 2010 WL 4925811 (B.A.P. 10th Cir. Dec. 6, 2010). The plaintiffs authorized Shapiro to defend against the involuntary proceedings. Shapiro's conversion of the involuntary cases to chapter 11 constitutes a defensive action in furtherance of the defense he mounted with unanimous consent.[6] Green Bridge's testified at the hearing, through its principal, that the conversion was in Debtors' best interest. However, Green Bridge and Special Situation demanded that Shapiro take no further unauthorized actions (PXs 35-39) thereby establishing that they did not acquiesce to his actions beyond the conversion. The additional actions in furtherance of the bankruptcy were, therefore, clearly unauthorized.

---

[6] Without this finding that Shapiro made the conversion within his authority, the case might revert to the involuntary chapter 7 liquidation.

**Temporary Restraining Order Analysis**

The Court has the equitable power to issue an injunction both inherently and pursuant to Bankruptcy Rule 7065. The requirements for the issuance of a temporary restraining order require the movant to establish a reasonable probability of success on the merits, that movant will suffer irreparable injury in the absence of relief, that the grant of injunctive relief will not result in greater harm to the non-moving party (balancing of hardship) and the relief is in the public interest. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3rd 191, 196 (3rd Cir. 2003).

1. Likelihood of Success

The Court has already discussed and made findings relating to Shapiro's lack of authority to take unilateral action on behalf of Slazer and Debtors. Accordingly, plaintiffs have established the likelihood of success.

2. Irreparable Harm

Shapiro's unauthorized actions and his lack of authority place into question the entirety of the bankruptcy and its future course. The requirement of irreparable harm is satisfied.

3. Balancing of the Hardships -- Harm to Shapiro and Debtors

Shapiro has established no harm from enjoining him from taking further action on Debtors' behalf. He can hardly ask to continue to take unauthorized actions

4. The Public Interest

The public interest is best served in this case by enjoining unauthorized actions and enforcing the terms of the Slazer Operating Agreement.

## Conclusion

The Court will issue an Order restraining Shapiro from taking further action in violation of Slazer's and Debtors' governance instruments. Plaintiffs have established that Slazer's members must act by majority for actions on its behalf and by unanimity for Material Actions on Debtors' behalf. Unless plaintiffs and Shapiro reach agreement, a deadlock will exist. If the deadlock continues, the Court may be compelled to appoint a Chapter 11 trustee. It is therefore imperative that the plaintiffs and Shapiro enter into negotiations to develop a plan. The Court will consider the appointment of a Chapter 11 trustee at the hearing scheduled for February 8, 2011. Plaintiffs and Shapiro will be well advised to appear at the hearing with a term sheet for a plan of reorganization. The parties should also be prepared to address the attorney representation of Debtors.

Dated: January 31, 2011

KEVIN GROSS, U.S.B.J.